<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN DESCAFANO,<br><br>*Plaintiff,*<br><br>v.<br><br>BJ's WHOLESALE CLUB, INC.,<br><br>*Defendant.* | Civil Action No.: 15-cv-7883 (PGS)(DEA)<br><br><br><br><u>MEMORANDUM</u><br><u>AND</u><br><u>ORDER</u> |

**SHERIDAN, District Judge.**

<u>Facts:</u>

John Descafano ("Descafano") makes claims under the Americans with Disabilities Act (ADA) and the New Jersey Law Against Discrimination (NJLAD) against BJ's Wholesale Club, Inc. ("BJ's"). He was hired by BJ's on November 15, 2013 as a Front Door Asset Protection Team Member at its Toms River location. He suffers from Charcot Marie Tooth Disease and back-related issues. Descafano alleges that he was terminated on January 19, 2014 because of his disability, and in retaliation for seeking accommodation for the disability. This motion to dismiss only concerns the arbitration agreement.

BJ's implemented its "Open Door Solutions" dispute resolution and arbitration program in or around April and May of 2013. (See Declaration of Michael Loudon, V.P. of Operations Support for BJ's ("Loudon Decl.") ¶ 2; Ex. 2). Since that time, each employee receives a packet with information on this policy containing a Mutual Agreement to Arbitrate Claims, the Open

1

Door Solutions Plan Document and Rules and Procedures, an introductory letter from Laura Sen, the CEO and President of BJs, and an Open Door Solutions Program Acknowledgment of Receipt Form. (Id. ¶ 4).

The Mutual Agreement to Arbitrate Claims is an agreement for BJ's employees to submit to final and binding arbitration for "all employment-related legal disputes, controversies, or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law." (Id., Ex. 2, Art. 2). These claims include the ADA, and state discrimination statutes. (Id). The Agreement applies to all applicable claims filed on or after April 29, 2013. Under the Agreement, employees waive their rights to have "employment-related claims" decided in court. (Id).

The Open Door Solutions Rules and Procedures ("Rules and Procedures") provide instructions on how to follow the arbitration process. (Id., Ex. 2, Art. 6). The Mutual Agreement to Arbitrate Claims provides employees with the chance to opt out of the program and arbitration agreement: "In order to opt out, I must sign and submit a 'Mutual Agreement to Arbitrate Claims Opt-Out Form' that is available by writing to BJ's Office of Open Door Solutions..." BJ's also provides a brochure with a question and answer format. (Id., Ex. 3 (Q&A)).

The Rules and Procedures state: "employment or continued employment after the Effective Date of this Program and any modification of the same constitutes consent by both the Team Member and BJ's to be bound by this Program, both during and after termination of employment." (Id., Ex. 2, Art. 21).

On the day of Plaintiff's hire, he allegedly received these documents. (Id. ¶¶ 5, 10; Exs. 1-4). BJ's Open Door Solutions Program Acknowledge of Receipt Form ("Acknowledgment") was signed by Plaintiff on November 15, 2013. (Id., Ex. 5). The Acknowledgment form states:

> Attached is BJ's new dispute resolution program known as "Open Door Solutions," which explains how you and BJ's resolve employment related disputes. Please acknowledge your receipt of the attached program by completing the form below, signing and dating where indicated, and make sure you read the program carefully, as it will apply to you.

On or about October 29, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Plaintiff a Notice of Right to Sue on August 6, 2015. (Compl. ¶ 5). This action was filed on November 4, 2015. Plaintiff did not attempt to follow BJ's arbitration procedures beforehand.

**Legal Standard:**

District Courts may resolve a motion to compel arbitration under the 12(b)(6) motion to dismiss standard. *See Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013). The Motion to Dismiss standard is appropriate if "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause..." *Id.* at 776 (internal quotations omitted).

**Analysis:**

The arbitration agreement in this case states that the Federal Arbitration Act ("FAA") controls. (Loudon Decl., Ex. 2, Art. 18). In order to apply the FAA, the court must find that the arbitration contract "evidenc[es] a transaction involving [interstate] commerce." 9 U.S.C. § 2. But the contract "need have only the slightest nexus with interstate commerce." *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1240 (D.N.J. 1994).

The purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Beery v. Quest Diagnostics*, 953 F.Supp.2d 531, 536-37 (D.N.J. 2013) (internal quotation and citation omitted).

3

In order to achieve this end, the FAA provides that contracts containing arbitration clauses "shall be binding" and allows for a federal court to stay proceedings in any matter referable to arbitration. 9 U.S.C. §§ 2, 3, 4. Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Beery*, 953 F.Supp.2d at 537. In New Jersey, an arbitration agreement "is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract." N.J.S.A. § 2A:24-1.

In order to determine whether to compel arbitration, the court must consider: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009). Federal courts look to state contract law on the issue of contract formation. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Under established law, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted).

Under New Jersey law, an enforceable contract involves "a bargained for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Martindale v. Sandvik*, 173 N.J. 76, 88 (2002). Like a contract, an arbitration agreement is enforceable if there is consideration and it was entered into knowingly and voluntarily. See *id*. Once a party receives notice, acceptance of the arbitration program may be signified by failing to opt out. *See Fischer v. Kmart*, 2014 WL 3817368, *3 (D.N.J. Aug. 4, 2014). "In all jurisdictions that have considered the question [of employment as a contract], courts have held that the creation of an employment relationship...is sufficient

consideration to uphold an arbitration agreement contained in an employment application."
*Martindale*, 173 N.J. at 88.

Defendant claims that Plaintiff clearly accepted the arbitration agreement here by signing the acknowledgment, failing to return the opt-out form, remaining silent on the matter, and continuing to work at BJ's. *See Fields v. Morgan Tire & Auto, Inc.*, 2008 U.S. Dist. LEXIS 21788, at *9-10 (D.N.J. Mar. 18, 2008) (employee signified consent to arbitration program by signing the acknowledgment form attesting that he received and reviewed the arbitration program).

There was also sufficient consideration here. *See Jayasundera v. Macy's Logistics & Operations*, 2015 WL 4623508 at *4 (D.N.J. Aug. 3, 2015) ("sufficient consideration for the arbitration agreement also exists, as the agreement mutually obliges Macy's and Plaintiff to arbitrate all employment disputes and Plaintiff has continued his employment with Macy's.") One other federal court has analyzed BJ's Open Door Solutions Program and decided to compel arbitration. *See Powell and Galan v. BJ's Wholesale Club, Inc.*, No. 3:14-cv-00081 (D. Conn. Aug. 13, 2014).

Descafano's claims also fall within the scope of the arbitration agreement. Plaintiff consented to arbitrate "all employment-related legal disputes, controversies, whether arising under federal, state or local decisional or statutory law." (Loudon Decl., Ex. 2, Art. 2). These claims include the ADA. (Id).

Plaintiff makes three arguments in opposition: (1) he did not agree to arbitration; (2) the contract is illusory; and (3) the Court should permit limited discovery to resolve this issue.

Plaintiff main claim is that he did not agree to arbitration. In New Jersey, an employment arbitration provision is enforceable where "an employee has agreed clearly and unambiguously

to arbitrate the disputed claims." *Leodori v. CIGNA Corp*, 175 N.J. 293, 302 (2003). According to Plaintiff, the only document that he signed was the Acknowledgment of Receipt Form, and this document merely stated that Descafano acknowledged receipt of the documents, not that he agreed to arbitration; moreover, the document did not even mention "arbitration" or "opt out."

While the Acknowledgment of Receipt Form does not explicitly state "arbitration" or "opt out," it does say, that it is attached to the "dispute resolution program known as 'Open Door Solutions,' which explains how you and BJ's resolve employment-related disputes." The other forms clearly explain this dispute resolution program, including how to initiate arbitration procedures, and how to opt out. The Acknowledgment Form stresses that the program should be read "carefully, as it will apply to you." Moreover, the forms accompanying the acknowledgment explain that continued employment would signify consent. Defendant has pointed to several cases in this district indicating that a Plaintiff need not sign all of the accompanying documents to be bound by an arbitration program, and signing an acknowledgment form by itself is sufficient. *See Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015); *Bourgeois v. Nordstrom*, 2012 WL 42917, at *3 (D.N.J. Jan. 9, 2012); *Taha v. Tires Plus*, 2011 WL 2293330, at *3 (D.N.J. June 9, 2011).

The Court finds that Plaintiff properly consented to be bound by the arbitration policy.

Plaintiff also argues that he contract is illusory and unconscionable because it reserves BJ's right to litigate certain claims while preventing Descafano from doing so. An employment agreement is unenforceable if it is one-sided and provides the employer with certain advantages over the employee. *See Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 207 (3d Cir. 2010). Plaintiff explains that the Mutual Agreement to Arbitrate Claims form gives BJ's the ability to seek an injunction on issues related to confidential information, unfair competition, and post-

employment terms. However, it is not clear what Plaintiff is referring to. The Mutual Agreement to Arbitrate clearly states: "BJ's and I agree that *either of us* still has the right to file a claim in court seeking an injunction..." (Loudon Decl, Ex. 1, ¶ 3) (emphasis added). There is nothing one-sided about this provision.

Finally, as an alternative to denying the motion to dismiss, Plaintiff seeks discovery prior to a decision on this matter. He notes that, where arbitrability is not "apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record." Also, where the complaint and associated documents "facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question at issue...the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard...Under either of those scenarios, a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant 'must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity' of the arbitration agreement." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013). But it is clear on the information provided that a valid arbitration agreement existed, and that Plaintiff agreed to be bound by that agreement by signing the Acknowledgment. Further discovery is not needed.

The Court will dismiss the Complaint. *See Seus v. John Noveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998) ("If all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it.")

## ORDER

Upon consideration of the Motion of Defendant BJ's Wholesale Club, Inc. to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 11], Plaintiff's opposition thereto, and any reply; for the reasons stated on the record on April 18, 2016, and for good cause shown;

IT IS, on this __27__ day of April, 2016, hereby

**ORDERED** that Defendant's Motion to Dismiss is GRANTED; and it is further

**ORDERED** that Plaintiff is directed to submit the dispute to binding arbitration pursuant to the terms of the Arbitration Policy/Agreement between the parties.

_____
PETER G. SHERIDAN, U.S.D.J.